## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN H. ARNSTEIN,** *et al.*, **individually and on behalf of a class of persons similarly situated,**   )<br>   )<br>   )<br>   )  **PLAINTIFFS,**   )<br>   )  **v.**   )<br>   )  **MVM, INC.,**   )<br>   )   **DEFENDANT.**   )<br>   ) | **CIVIL ACTION NO.:**<br>**12-cv-10666-RWZ** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MVM, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant MVM, Inc. ("Defendant" or "MVM") respectfully submits this Memorandum of Law in support of its Motion to Dismiss all Counts contained in the First Amended Complaint ("Complaint" or "Compl.") that Plaintiffs originally filed in Massachusetts Superior Court for Suffolk.[1]   Plaintiffs' Complaint should be dismissed in its entirety for several reasons.  As an initial matter, Plaintiffs' state law claims fail in their entirety because they are barred by the federal enclave doctrine.  Second, Plaintiffs have failed to plead sufficient facts to allow the Court to reasonably conclude that their individual and class allegations are more than a sheer possibility.  This minimal pleading cannot withstand scrutiny under the standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).   Finally, because Plaintiffs' claims are inextricably intertwined with the collective bargaining agreements governing their employment with MVM, their claims are entirely preempted by Section 301 of the Labor-Management

---

[1] Pursuant to 28 U.S.C. §§ 1331, 1441(b), 1442(a)(1) and 1446, Defendant removed this action on April 13, 2012 on the basis that Plaintiffs' state law claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Defendant amended its removal notice on April 19, 2012, further asserting that removal of this case is also proper pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.

Relations Act ("LMRA"). Accordingly, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

## I.  STATEMENT OF FACTS[2]

The seventy individually-named Plaintiffs are all court security officers formerly employed by Defendant MVM, Inc. to work on a contract between MVM and the United States Marshal's Service to provide security services at the United States Federal Courthouse located in Boston, Massachusetts (the "Moakley Courthouse").  (Compl., ¶¶ 1-71, 73.)   The territory where the Moakley Courthouse now stands was transferred to the federal government on or about December 14, 1992.  A copy of the relevant federal court filings identifying the property at issue and the Order for Delivery of Possession of the property to the federal government, dated December 14, 1992, is attached hereto as Exhibit 1.[3]   On November 18, 1992, the United States Government gave notice that a complaint for condemnation was filed in this Court "to condemn land in Suffolk County for public use" to build the Moakley Courthouse.  *See* Exhibit 1 at 1-7, *United States of America v. 4.56 Acres of Land And 0.78 Acres of Land*, Civ. Action No. 92-12833-WD (D. Mass) (attaching a schedule describing the land at issue, "the public use for which said land is taken is the construction and operation of a new United States courthouse.").   On December 14, 1992, the United States District Court for the District of Massachusetts issued an Order for Delivery of Possession that

---

[2] For purposes of this Motion only, MVM accepts as true all factual allegations contained in Plaintiffs' First Amended Class Action Complaint. *See Ramos-Pinero v. Puerto Rico*, 453 F.3d 48, 51 (1st Cir. 2006); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  Nothing herein is or should be construed as an admission by Defendant.

[3] A court may look to matters of public record in ruling on a motion under Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary judgment, including documents from prior court adjudication. *Rasheed v. Duval*, No. 94-1634, 1995 U.S. App. LEXIS 15038, at *2 (1st Cir. Jun. 19, 1995); *Giragosian v. Ryan*, 547 F. 3d 59, 66 (1st Cir. 2008).  MVM respectfully requests that this Court take judicial notice of the federal court records cited herein. *See* Fed. R. Evid. 201.

requiring the prior owners to "immediately surrender possession of said property" to the federal government. *See* Exhibit 1 at 8.

Plaintiffs allege that they regularly worked 8.5 hour shifts while employed by MVM. (Compl., ¶ 76.) During these shifts, Plaintiffs were entitled to a thirty (30) minute unpaid meal break. *Id.* Plaintiffs claim that they were required to carry and answer two-way radios during their meal breaks. (Compl., ¶ 77.) Plaintiffs further allege that they were not permitted to leave the Moakley Courthouse during their meal breaks. (Compl., ¶ 78.) According to Plaintiffs, the thirty (30) minute meal breaks were never counted by MVM as hours worked or included as weekly hours for purposes of calculating overtime payments. (Compl., ¶¶ 79-81.) Specifically, Plaintiffs claim that because they were not allowed to leave their work location during their meal breaks: (1) the time spent during their unpaid meal breaks must be counted as hours worked and compensated as such; and (2) all employees who worked over 40 hours (including meal break hours) in any given workweek are entitled to overtime compensation at a rate of one and one half times their regular rate of pay for that period. (Compl., ¶¶ 75-81, 85-90.)

Based on these allegations, Plaintiffs' Complaint asserts two counts. Count I alleges that by failing to pay Plaintiffs for their meal breaks, MVM violated Mass. Gen. Laws Ch. 149, §148. (Compl., ¶¶ 85-87.) Count II alleges that, by virtue of not treating Plaintiffs' meal breaks as compensable time worked and failing to pay Plaintiffs for their meal breaks as alleged in Count I, MVM failed to pay Plaintiffs' overtime for all hours worked over forty in a workweek in violation of Mass. Gen. Laws Ch. 151, §1B. (Compl., ¶¶ 88-90.) Plaintiffs purport to bring this action on behalf of themselves and, pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure, on behalf of a class of similarly situated individuals, which includes all present and past court security officers employed by MVM, Inc. at the Moakley Courthouse in Boston who were not paid for meal periods. (Compl., ¶ 72.) As part of their request for

relief, Plaintiffs seek to recover: (1) all wages improperly withheld for plaintiffs' one half-hour meal periods; (2) overtime owed to plaintiffs and all class members as a result of not counting the one half-hour meal period as time worked; and (3) treble damages.   (Compl., ¶ "WHEREFORE," (1) – (3) (following ¶90).)

Notably absent from the Complaint is any reference to the fact that during their employment with MVM, all of the individually-named Plaintiffs, and all individuals in the putative class, were members of a bargaining unit whose terms and conditions of employment were governed by a collective bargaining agreement ("CBA") between MVM, Inc. and the Court Security Officers Association, Court Security Officers/First Circuit Court of Appeals (New England).   It is well established, however, that either a statement of the contract's terms or the attachment of the applicable contract are a necessary part of pleading a contract claim, and when such allegations are absent the defendant may submit the underlying contract for the court's review at the motion to dismiss stage.[4]   Accordingly, a true and accurate copy of the CBA covering Plaintiffs and MVM is attached hereto as Exhibit 2.[5]

---

[4] *See Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (upholding district court's consideration of a collective bargaining agreement in support of defendant's motion to dismiss despite fact that complaint did not refer specifically to agreement where due process claim rested on the terms of the CBA); *see also Parker v. Hostetler,* 2008 U.S. Dist. LEXIS 8984, at *7 (N.D. Ind. Feb. 6, 2008) ("the court may also consider contracts attached to the motion to dismiss that are referred to in the plaintiffs' complaint and are central to the claim") (citations omitted); *Walsh v. Town of Randolph*, 2005 WL 1792118 (Mass. App. Div. July 20, 2005) (district court's decision to consider collective bargaining agreement submitted by defendant in support of its motion to dismiss was proper since plaintiff's claims were dependent upon the agreement).

[5] Defendant's submission of the applicable collective bargaining agreement as an undisputedly authentic document that governs the terms of the Plaintiffs' employment with MVM, may be considered by this Court without converting this motion to dismiss into a motion for summary judgment.  *See Clorox Co. v. Proctor & Gamble Commer. Co.,* 228 F.3d 24, 32 (1st Cir. 2000) (in considering a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint"); *see also Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988) ("'when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant

4

As support for their claims, Plaintiffs' First Amended Complaint implicitly references the CBA in numerous paragraphs, including but not limited to the following:

- "Plaintiffs regularly worked 8.5 hour shifts while employed by MVM.  By law and MVM rules, all plaintiffs were entitled to a 30 minute unpaid meal break during each 8.5 hour shift.  MVM rules plainly stated, 'the meal break may not be considered as time worked.'" (Compl., ¶ 76.)

- "MVM paid overtime to plaintiffs only for hours worked over 40 in one week." (Compl., ¶ 81.)

These factual allegations are then incorporated into each of Plaintiffs' claims, Counts I-II. (Compl., ¶¶ 85-90.)

The CBA contains detailed provisions governing breaks, meal periods, and overtime payments, as well as other procedures and requirements.  Of significance to this action are the following provisions:

**Section 7.1 Workday and Workweek:** For purposes of this Article, a regular work week of forty (40) hours of work fifty-two (52) weeks per year (less holidays) if the post and hours are available, in the United States marshals Service Contract, excluding lunch periods shall constitute a normal full-time workweek for full-time Employees.  Employees working the minimum of eight (8) consecutive hours shall normally receive an unpaid lunch period of at least thirty (30) minutes unless work conditions preclude scheduling of this period.  Shifts shall be scheduled at the discretion of the Employer to fulfill the needs of the Government.

**Section 7.2 Overtime**:  An overtime rate of time and one-half (1 1/2) of an employee's base rate of pay (exclusive of health and welfare and other fringe additions to pay) shall be paid for all hours actually worked in excess of forty (40) hours in a work week.

**Section 7.3 Overtime Requirement:** If requested to work overtime time (i.e., over forty (40) hour in a workweek) or extra hours, the Employee shall be required to do so unless the Employee is excused for good cause.

---

may introduce the exhibit as part of his motion attacking the pleading'") (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327 at 489 [1969]); *In re Computervision Corp. Sec. Litig.,* 869 F. Supp. 56, 59-60 (D. Mass. 1994) (court may consider prospectus, attached to defendant's motion to dismiss, without converting it to a motion summary judgment).

Overtime will be distributed as equitably and fairly as practicable among Employees regularly assigned to the particular work location (including shared position Employees), subject to the direction of the judges and/or Marshal's Service shall be used in the assignment of overtime except when the Employer is directed by the U.S. Marshals Service, or in situations dictated by the availability of personnel and amount of notice given for overtime.

**Section 7.5 Rest Period**:  There shall be two fifteen (15) minutes paid rest periods when properly relieved, and one (1) thirty (30) minutes unpaid lunch for each eight (8) hour shift.  One rest period shall be in the first half of the shift, and the second rest period shall be in the last half of the shift.  On occasion, due to exceptional work requirements, Employees may have to work through these rest periods.  The Company recognizes the requirement to provide regularly scheduled breaks.  It is not the intent of the Company to deny, avoid, or abuse this requirement.

**Section 13.4 Break Rooms**:  The Employer will make its best effort to obtain from the Government break rooms for Employees for breaks and lunch without management using the room as an office, and will make its best effort to have the Government equip the room with water.  The providing of these facilities is the prerogative of the U.S. Government.

**Section 13.5 Lockers:**  The Employer will make its best effort to obtain lockers from the Government for the use of the Employees.  The providing of these facilities is the prerogative of the U.S. Government.  The Employer will only open an Employee's locker when directed to do so by the USMS or when there is approval from the Contract Manager.  The Employer will attempt to do all searches in the presence of the Employee and/or a Union steward or official.

## ARTICLE 19: SERVICE CONTRACT PROCEDURES AND OBLIGATIONS

**Section 1:**  The parties recognize that they are providing a service to the United States Government who has the responsibility and authority for providing security to the judicial facilities.   In the event a government directive necessitates a deviation from the obligations or procedures contained in this Agreement, the parties will confer with regard to the effects, if any, of the deviation necessitated by the Government's directive with the goal of resolving the deviation.

**Section 2**:  The Union acknowledges that the Employer has entered into the Contract with the Government to provide services under specific terms and conditions, and that the Government has broad discretion to direct the activities of the Employer within the scope of the Contract.   Any determination by the Government to supersede the above understanding of the parties must be in written form and the Union expressly acknowledges the Employer's obligation to comply with such directive, and the fact the

6

Union or Employee is not permitted to grieve or arbitrate the Employer's decision to do so or the impact of such decision.

**Section 3***:*   Notwithstanding any provision of this Agreement, to the extent the Government requires compliance with specific procedures (e.g. security clearances, medical examinations, weapon proficiency testing, uniforms/appearance standards, staffing determinations, etc.), or the requirements of the Service Contract Act, the Employer will comply with those requirements without recourse by any Employee or the Union against the Employer.

*See* Exhibit 2, Sections 7.1-7.3; 7.5; 13.4-13.5, 19.1-19.3.

## II.   ARGUMENT

### A.   Standard of Review

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the factual allegations in Plaintiffs' Complaint are treated as true, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Bell Atlantic*, 550 U.S. at 554-555; *see also Eastern Food Servs, Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 9 (1st Cir. 2004). Similarly, when considering a motion to dismiss, the Court need not "swallow plaintiffs' invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Massachusetts Sch. of Law v. ABA*, 142 F.3d 26, 40 (1st Cir. 1998) (citations omitted); *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (court is not obliged to "honor subjective characterizations, optimistic predictions, or problematic suppositions") (citations omitted).

### B.   Plaintiffs' State Law Claims Are Barred By Federal Enclave Jurisdiction.

All of Plaintiffs' state law claims must be dismissed as contrary to the exclusive "federal enclave" jurisdiction governing Plaintiff's workplace. *See Kelly v. Lockheed Martin Servs.*

*Group,* 25 F. Supp.2d 1 (D. P.R. 1998).  The federal enclave doctrine developed under Article I,

Section 8, clause 17 of the Constitution.  The constitutional language provides that:

> Congress shall have power...to exercise exclusive Legislation in all
> Cases whatsoever over such District[s]...as may, by Cession of
> particular States...become the Seat of the government of the United
> States, and to exercise like authority over all Places purchased by
> the Consent of the Legislature of the State in which the Same shall
> be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards,
> and other needful Buildings.

U.S. Const. Art. I, § 8, cl. 17.  The United States acquires exclusive jurisdiction over a federal

enclave when it "appear[s] that the State, by consent or cession, has transferred to the United

States that residuum of jurisdiction which otherwise it would be free to exercise . . . ."  *Paul v.*

*United States*, 371 U.S. 245, 267 (1963) (quoting *Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186,

197 (1937)); *see also Osburn v. Morrison Knudsen Corp.*, 962 F. Supp. 1206, 1208 (E.D. Mo.

1997) ("A federal enclave is territory which has been transferred by a state through cession or

consent to the United States over which the federal government has acquired exclusive

jurisdiction.").  This includes a federal courthouse.  *Rodriguez v. United States Marshall Serv.*,

2005 U.S. Dist. LEXIS 19516, at *36 (D. P.R. Sept. 8, 2005); *see also, e.g., United States v.*

*Markiewicz,* 978 F.2d 786, 797 (2d Cir. 1992)  (the federal enclave laws are a group of statutes

that permits the federal courts to serve as a forum for the prosecution of certain crimes when they

occur within the 'special maritime and territorial jurisdiction of the United States', *18 U.S.C. § 7*;

this jurisdiction includes federal land, and property such as federal courthouses and military

bases).

   "State laws adopted after cession of property as a federal enclave 'are without force or

effect on the federal enclave.'"  *Rodriguez*, 2005 U.S. Dist. LEXIS 19516, at *36 (quoting *Lord*

*v. Int'l Brotherhood of Elec. Workers*, 646 F. 2d 1057, 1060 (5th Cir. 1981)).  It is well settled

that activities on federal enclaves are shielded from state law unless Congress provides "clear

and unambiguous" authorization for such regulation.  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988).

Here, Plaintiffs allege that they were employed by MVM at the Moakley Courthouse located in Boston, Massachusetts.  (*See* Compl., ¶¶ 2-72.)  Plaintiffs' state law claims arise from their employment at the Moakley Courthouse.  (*See id.*, ¶¶ 75-79.)  The territory where the Moakley Courthouse now stands was transferred to the federal government on or about December 14, 1992.  *See* Exhibit 1  (court records showing transfer of land where Moakley Courthouse now sits to federal government on December 14, 1992).  However, the state law that provides the predicate for both of Plaintiffs' causes of action (Mass. Gen. Law Ch. 149, § 148) was not amended to add a private right of action until on or about July 1, 1993.  *See* 1993 Mass. ALS 110, 1993 Mass. Acts Ch. 110 (formally House Bill No. 5300).  Furthermore, Massachusetts's wage and hour laws were not amended to impose automatic treble damages until on or about April 14, 2008. *See generally* 2008 Mass. Acts Ch. 80 (formerly Senate Bill No. 1059).  Accordingly, as the basis for Plaintiffs' underlying claims were not enacted at the time the federal government obtained possession to the land on which the Moakley Courthouse sits, all state law claims are barred pursuant to the federal enclave doctrine.

Indeed, the federal courts that have addressed the federal enclave doctrine in the employment law context have repeatedly held that state wage and hour laws or other employment-related statutes do not apply to federal enclaves. *See Bouthner v. Cleveland Constr., Inc.*, 2011 U.S. Dist. LEXIS 79316, *18-19 (D. Md. July 21, 2011) (holding that state law claims, including those under the state wage and hour laws, could not apply to work performed at the National Naval Medical Center as it is a federal enclave); *Manning v. Gold Belt Falcon, LLC*, 681 F. Supp.2d 574 (D.N.J. 2010) (the federal enclave doctrine precluded plaintiffs' New Jersey wage and hour claims because plaintiffs worked at Fort Dix); *Hutchison v. Andrulis Corp.*, 2004 U.S. Dist. LEXIS 5684, at *1-2 (N.D. Fla. Mar. 19, 2004) (adopting in full magistrate judge's

report and recommendation that Florida's whistleblower statute was inapplicable to an employee whose place of employment – Department of the United States Navy, Coastal Systems Station, in Panama City, Florida – was located on a federal enclave); *Kelly,* 25 F. Supp. 2d. at 6 (D.P.R. 1998) (refusing to apply Puerto Rico's anti-discrimination statute against private employer at Roosevelt Roads Naval Station in Ceiba, Puerto Rico, a federal enclave); *Miller v. Wackenhut Servs.*, 808 F. Supp. 697, 700 (W.D. Mo. 1992) (dismissing plaintiff's claims under Missouri's anti-discrimination statutes because the plant at which plaintiff was employed was a federal enclave); *Snow v. Bechtel Constr. Inc.*, 647 F. Supp. 1514, 1520 (C.D. Cal. 1986) (dismissing plaintiff's action because state wrongful termination law did not preexist the federal enclave and was, therefore, inapplicable).  As such, Plaintiffs' Complaint should be dismissed.

### C.    The Complaint Does Not Adequately Plead Facts That Make Plausible The Class Claims

In their Complaint, Plaintiffs allege that, pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure,[6] they seek to bring their claims both individually and on behalf of a class of similarly situated individuals, which includes all present and past court security officers employed by MVM, Inc. at the Moakley Courthouse in Boston who were not paid for meal periods.  (Compl., ¶ 72.)  Based on nothing more than mere conclusory statements alleging class claims pursuant to Rule 23, the Complaint wholly lacks the specific factual allegations needed to state plausible claims for class relief.  To be clear, Plaintiffs' Complaint does not merely fail to allege *some* facts in support of their class allegations – rather Plaintiffs' Complaint fails *entirely* to either: (a) allege the satisfaction of the requirements of Rule 23 or (b) tie any of the facts alleged in the Complaint to those requirements.

---

[6] Because Plaintiffs originally filed their complaint in state court, only to subsequently have it removed to federal court by MVM, Plaintiffs reference Massachusetts Rule of Civil Procedure 23, rather than the Rule 23 of the Federal Rules of Civil Procedure.  However, the language of the applicable sections of both rules are virtually identical.

As the United States Supreme Court admonished in *Twombly*:

> A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed. [T]he costs of modern federal litigation and the increasing caseload of the federal courts counsel against sending parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

550 U.S. at 558 (internal quotation marks and citation omitted). Here, the Complaint is lacking of any specificity that states plausible grounds for a class action under Massachusetts state law and, therefore, the class allegations should be dismissed.

Federal Rule of Civil Procedure 23(a) requires that Plaintiffs show the following to demonstrate the suitability of a class action mechanism: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Once these prerequisites are satisfied, a party must also satisfy one of the requirements of Federal Rule of Civil Procedure 23(b).

Here, Plaintiffs' Complaint is utterly devoid of any allegation addressing their satisfaction of the threshold requirements for maintaining a class action under Rule 23. Indeed, "it is the obligation of the party seeking class certification to adequately plead all of the requirements of [Rule 23]." *Herisko v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 89-1825, 1991 U.S. App. LEXIS 2130, at *23 (1st Cir. Jan. 30, 1991). Specifically, with regard to the potential class, nowhere in the Complaint do Plaintiffs address the numerosity, commonality, typicality, or adequacy of representation requirements, or any of the Rule 23(b) elements. Merely making a blanket statement that the claims apply to a class of similarly situated individuals – as Plaintiffs do here – is facially insufficient to establish a class claim. *Twombly*, 550 U.S. at 570 (a court should grant a motion to dismiss when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."); *see also Iqbal*, 129 S.Ct. at 1950 ("[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (internal quotations omitted).

At most, the scant class allegations alleged by Plaintiffs amount to conclusory statements and are not enough to allow the court to reasonably infer that establishing the perquisites to bring a class action Rule 23 is anything more than a "sheer possibility."  As such, Plaintiffs' class claims are legally insufficient under *Twombly* and *Iqbal* and should be dismissed.[7]

### D.   The Complaint Does Not Adequately Plead Facts That Make Plausible Individual or Class Claims

Plaintiffs' Complaint brings allegations under Massachusetts state law on behalf of themselves individually and a purported class of similarly situated individuals.   While the Complaint consists of mere conclusory statements alleging violations of state law, it lacks the specific factual allegations needed to state plausible claims for either individual or class relief. As such, Plaintiffs' Complaint fails to satisfy the *Twombly/Iqbal* standards and should be dismissed in its entirety.

Plaintiffs allege that they regularly worked 8.5 hour shifts while employed with MVM, but were denied the right to leave their place of employment to take their thirty (30) minute meal breaks.  (Compl. ¶ 76.)  Consequently, Plaintiffs claim that they were: (1) denied compensation for the thirty (30) minute unpaid meal breaks; and (2) they were denied overtime for hours

---

[7] Though this motion is framed as a motion to dismiss under Rule 12(b)(6), to the extent that the Court believes that the proper mechanism to address the deficiencies with Plaintiffs' class allegations is through a motion to strike, Defendant has alternatively moved to strike the class allegations pursuant to Fed. R. Civ. P. 12(f).  *See* Defendant's Motion to Dismiss Complaint. Indeed, a "court may strike class allegations 'where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate.'"  *Barasich v. Shell Pipeline Co.*, No. 05-4180 Section: "J"(3), 2008 U.S. Dist. LEXIS 47474, at *8-9 (E.D. La. June 19, 2008) (noting also that "Courts apply the same standard in ruling on a motion to strike under Rule 12(f) . . . as in determining a motion to dismiss under Rule 12(b)(6).").

worked in excess of 40 hours (including the meal break) worked in a week. (*See* Compl., ¶¶ 75-81, 85-90.)

However, merely stating that a plaintiff was not compensated in accordance with the underlying law is insufficient to state a viable claim for unpaid compensation.  *See Pruell v. Caritas Christi*, 2010 U.S. Dist. LEXIS 101761, at *10-11 (D. Mass. Sept. 27, 2010), *rev'd and remanded on other grounds,* 645 F.3d 81 (1st Cir. 2011) (plaintiffs failed to state a claim when they did not allege approximately how many hours they worked per week and their hourly rate or weekly wages).  Instead, to survive a motion to dismiss, a plaintiff must, at least, identify what his dates of employment were, and some approximation of the number of unpaid overtime hours worked.  *See DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 508-09 (E.D.N.Y. 2011); se*e also Attanasio v. Cmty. Health Sys.*, 2011 U.S. Dist. LEXIS 121764, at *20-22 (M.D. Pa. Oct. 20, 2011); *Mell v. GNC Corp.*, 2010 U.S. Dist. LEXIS 118938, at *8 (W.D. Pa. Nov. 9, 2010); *Beaulieu v. Vermont*, 2010 U.S. Dist. LEXIS 101192, at *15 (D. Vt. Aug. 5, 2010); *Jian Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628-30 (S.D.N.Y. 2007).

By that measure, Plaintiffs' Complaint is plainly deficient.  In particular, the Complaint wholly fails to allege any facts relating to the duration of each individual Plaintiff's employment, the dates of unpaid meals breaks, the dates of overtime purportedly incurred, their rates of pay, or any approximation of the number of unpaid overtime hours worked.  Moreover, while Plaintiffs allege that they were scheduled for 8.5 hour shifts, at no point did they indicate that they were scheduled – or actually worked – more than 40 hours in a workweek, and, as such, were entitled to overtime.  Without such factual allegations, there is nothing to raise Plaintiffs' Complaint "above the speculative level," as is necessary under *Twombly* and *Iqbal*.

For example, in *Zhong,* the plaintiff failed to provide any information regarding the number of hours of unpaid overtime purportedly worked, instead merely alleging that he worked

"beyond 40 hours per week."  498 F. Supp. 2d at 630.  Consequently, the court dismissed the plaintiff's claim for overtime compensation holding that he failed to provide sufficient information to support his overtime claim and enable a general calculation of his damages.  *Id.* Likewise, the court in *Mell* dismissed the plaintiffs' claims under the FLSA where the complaint contained only broad conclusory allegations and failed to estimate a time period in which they worked without proper overtime compensation or include even an approximation of the number of uncompensated hours worked.  2010 U.S. Dist. LEXIS 118938, at *23.  Here, Plaintiffs' Complaint similarly fails to include sufficient information regarding their individual claims for unpaid meal breaks or overtime under Massachusetts state law such as whether unpaid overtime was actually worked, the dates of employment, purported dates and amount of unpaid straight time and overtime worked, or their rates of pay.

Indeed, in applying the *Twombly/Iqbal* standard in the wage and hour context, courts routinely dismiss complaints when, as here, they lack sufficient specificity and evidentiary foundation.  *See Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008) (complaint alleging that assistant managers were not paid overtime, that the defendant "regularly and repeatedly" failed to pay plaintiff for all hours actually worked, and that the defendant failed to keep accurate time records to avoid paying plaintiff's overtime wages was "[i]mplausible on its face"); *Villegas v. J.P. Morgan Chase & Co.,* 2009 U.S. Dist. LEXIS 19265, at *13 (N.D. Cal. Mar. 6, 2009) (allegation that plaintiff "worked more than 40 hours in a work-week and more than 8 hours in a work day, thus entitling her to overtime pay" was insufficient to state a claim under the FLSA); *Harding v. Time Warner, Inc.,* 2009 U.S. Dist. LEXIS 72851, at *8-9 (S.D. Cal. Aug. 18, 2009) (allegations that the employer willfully failed to "pay and properly calculate overtime," "keep accurate records of all hours worked by its employees," and "provide all wages in a compliant manner" were "conclusory allegations as defined by *Twombly*" and would be assigned "no weight"); *Anderson v. Blockbuster, Inc*., 2010 U.S. Dist. LEXIS 53854, at

14

*6-7 (E.D. Cal. May 4, 2010) (general allegations that plaintiff worked more than 40 hours per week and defendants "willfully failed to pay all overtime" were "no more than conclusions [and]. . .not entitled to the assumption of truth"); *Gifford v. Meda*, 2010 U.S. Dist. LEXIS 45322, at *75 (E.D. Mich. May 10, 2010) (dismissing FLSA claim where "Plaintiffs have completely failed to allege adequate facts in support of their overtime claim"); *Stanke v. Penloyd, LLC*, 2010 U.S. Dist. LEXIS 40340, at *6 (N.D. Okla. Apr. 23, 2010) ("Absent specific allegations identifying which provision of the FLSA plaintiffs contend defendants violated, and facts alleged in support of those allegations, the court concludes that plaintiffs fail to state a plausible claim for relief under the FLSA."); *Darrow v. WKRP Mgmt., LLC*, 2010 U.S. Dist. LEXIS 43636, at *5-9 (D. Colo. Apr. 6, 2010) (dismissing FLSA claims for lack of clarity and conclusory allegations); *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1229 (D. Colo. 2010) (dismissing FLSA minimum wage claims where complaint "suffer[ed] from two basic flaws: lack of clarity and conclusory allegations"); *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1288 (D. Kan. 2010) (dismissing FLSA minimum wage claims where plaintiffs "alleged only conclusorily that [defendant's policies brought] their wages below the legal minimum").

The "facts" alleged by Plaintiffs amount, at most, to conclusory statements and do not rise above a speculative level. As such, Plaintiffs' Complaint is legally insufficient under *Twombly* and *Iqbal* and should be dismissed. *See Iqbal*, 129 S. Ct. at 1949 ("[w]hile highly "detailed factual allegations" are not mandatory, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and instead plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### E.    Plaintiffs' State Law Claims Are Preempted By Federal Labor Law

Section 301 of the LMRA grants federal courts jurisdiction over disputes "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ...."   29 U.S.C. § 185(a).   The U.S. Supreme Court has interpreted this

language as authorizing federal courts "to fashion a body of federal law for the enforcement of ... collective bargaining agreements." *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957).  It is well-settled that this authority forms the basis for federal preemption of state law claims which "depen[d] on the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988); *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997); *Mitchell v. Globe Newspaper, Inc.*, 602 F. Supp.2d 258, 260-61 (D. Mass. 2009).

The First Circuit has identified two ways in which a state law claim may "depend" on a collective bargaining agreement resulting in LMRA preemption.  First, a state law claim is preempted "if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement." *Flibotte*, 131 F.3d at 26.  Second, preemption applies if a state law claim requires a court to interpret the collective bargaining agreement. *Id.*  If either standard is met, the state law claim is precluded by the LMRA.  The preemptive force of Section 301 of the LMRA extends not only to standard breach of contract claims, but also to other theories of recovery based on state statutes or common law. *See Cavallaro v. UMass Memorial Healthcare, Inc.*, Case No. 11-1073 (1st Cir. April 18, 2012) (slip op. at 14) ("we have continued to treat state statutory claims in the economic area as preempted where they were intertwined with the CBA and more than mere consultation of the CBA is required") (citing *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12-16 (1st Cir. 2001) (further citations omitted)).   According to the Supreme Court, "when a state-law claim is substantially dependent on an analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the claim as a state law claim." *Int'l Bhd. Of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987).  Moreover, when Section 301 preempts a state law claim, the claim must be "dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

Through creative pleading, and by strategically omitting references to the respective CBA that governed the terms and conditions of their employment with MVM, Plaintiffs attempt to disguise their claims as having nothing to do with the CBA.  However, such artful pleading is improper because Plaintiffs' claims undoubtedly require interpretation of the CBA, and are accordingly completely preempted by Section 301 of the LMRA.  *See Cavallaro,* slip op. at 9-10 ("The interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule.")

To establish a claim under Mass. Gen. Laws Ch. 149 § 148 and Mass. Gen. Laws 151, § 1B, Plaintiffs' must demonstrate that they are owed wages or overtime as defined by the statutes, and whether they received a proper meal break.  *See Stanton v. Lighthouse Financial Servs., Inc.*, 621 F. Supp.2d 5, 10 (D. Mass. 2009).  To do so, multiple provisions under the applicable CBA must be interpreted by the Court.  Such provisions include detailed contractual requirements governing meal periods, as well as situations in which bargaining unit employees may be required to work overtime hours, and the intent of Defendant with respect to meal breaks provided to Plaintiffs.  For example, the CBA expressly states that "[t]he Company recognizes the requirement to provide regularly scheduled breaks.  It is not the intent of the Company to deny, avoid, or abuse this requirement."  *See* Exhibit 1, Section 7.5.  Yet Plaintiffs assert in their First Amended Complaint that Defendant maintained a policy that did not allow Plaintiffs to leave the courthouse, and therefore failed to provide regularly scheduled breaks, contrary to the language set forth in Section 7.5 of the CBA.  *See* Compl., ¶¶ 1, 78-79.  The Court will be required to interpret the CBA language to determine whether in fact such a policy existed, and to determine the intention behind including the language in the CBA in order to adjudicate whether a meal break violation occurred and, thus, additional wages are owed.

Moreover, under Article 19, Section 3 of the CBA, the Union acknowledged that MVM must follow all compliance requirements set forth by Government, and agreed that Plaintiffs and

17

other guards would have no recourse against Defendant as a result of such compliance. Therefore, if any requirements set forth by the Government placed any conditions on the activities of Plaintiffs during their meal breaks, the Court will be required to interpret the CBA language, as well as the applicable practices of the parties, in order to determine whether those conditions affected Plaintiffs' ability to freely take a meal break.   In addition, in order to determine wage rates and overtime requirements, multiple provisions under the CBA must be construed.

Because this type of consultation and application of the terms of collective bargaining agreements "amounts to 'interpretation' of the CBAs, section 301 preempts the plaintiffs' statutory wage claims." *Pruell v. Caritas Christi*, No. 09-11722-GAO, 2010 U.S. Dist. LEXIS 101770, at *11 (D. Mass. Sept. 27, 2010), *rev'd and remanded on other grounds,* 645 F.3d 81 (1st Cir. 2011).  As noted in *Pruell*, a case which also involved claims alleged pursuant to Mass Gen. Laws Ch. 149 and Ch. 151, preemption occurs where multiple or overlapping provisions under a CBA have to be interpreted to establish or resolve a plaintiff's claims.   *See id.* (dismissing claims brought under Mass Gen. Laws Ch. 149 and Ch. 151 because numerous provisions under the CBA had to be consulted and applied to determine potential liability); *see also Adames,* 258 F.3d at 13-15 (affirming dismissal of claims under Puerto Rico wage and hour law because interpretation of CBA was necessary to assess a flight attendant's remedy for alleged overtime violations where CBA contained multiple provisions dealing with differing wage rates for different types of time worked); *Mitchell*, 602 F. Supp.2d at 261-62 (dismissing claims under the Massachusetts Wage Act because they required an interpretation of the proper rate of vacation pay under the CBA); *Atchley v. Heritage Cable Vision Assoc.*, 101 F.3d 495, 500-02 (7th Cir. 1996) (holding claims for unpaid wages under Indiana Wage Payment Act preempted by § 301 where calculation of due date for wages and applicable penalties had to be determined from provisions of the CBA).  Because necessary interpretation of the CBA will

be unavoidable, Section 301 of the LMRA preempts Plaintiffs' state law claims and, accordingly, those claims must be dismissed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant MVM, Inc. respectfully requests that the Court issue an order granting its motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), including, if the Courts deems it appropriate, an order striking Plaintiffs' class allegations against Defendant pursuant to Fed. R. Civ. P. 12(f).

Dated: April 20, 2012

Respectfully submitted,

/s/ Christopher B. Kaczmarek
Christopher B. Kaczmarek (BBO #647085)
Roberta L. Ruiz (BBO #669629)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
ckaczmarek@littler.com

Joshua B. Waxman
(*pro hac vice* application to be submitted)
S. Libby Henninger
(*pro hac vice* application to be submitted)
**LITTLER MENDELSON, P.C.**
1150 17th Street N.W.
Suite 900
Washington, DC  20036
Phone 202.842.3400
Fax 202.842.0011
jwaxman@littler.com
lhenninger@littler.com

Attorneys for Defendant MVM, Inc.

19

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher B. Kaczmarek, hereby certify that on this 20th day of April 2012, the foregoing Memorandum of Law in Support of its Motion to Dismiss was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing, including the attorney of record for plaintiffs:

> Alan Shapiro
> Bryan Decker
> Sandulli Grace, PC
> 44 School Street, Suite 1100
> Boston, MA 02108
> ashapiro@sandulligrace.com
> bdecker@sandulligrace.com
> 617-523-2500
>
> Attorneys for Plaintiffs

/s/ Christopher B. Kaczmarek
Christopher B. Kaczmarek