UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN H. ARNSTEIN, et al.,<br>  Plaintiffs,<br><br>  v.<br><br>MVM, INC.<br>  Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 12-cv-10666-RWZ<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs John Arnstein, et al., file this opposition to Defendant MVM, Inc.'s motion to dismiss. As shown herein, the motion to dismiss should be denied. In this action, plaintiffs allege a violation of the Massachusetts Timely Payment of Wages statute, M.G.L. c. 148, §149. Plaintiffs contend that MVM violated the law when it failed to pay them for their one half hour lunch period. MVM does not allege that the plaintiffs were paid for their meal period, but rather contends that 1) the claims are barred by the federal enclave doctrine; 2) the plaintiffs' pleadings are inadequate; and 3) the application of state law is pre-empted by §301 of the Labor Management Relations Act. All three of MVM's contentions fail. Whether or not the plaintiffs work in a federal enclave, they are still entitled to the protection of Massachusetts Wage laws. With regards to their pleadings, plaintiffs are contemporaneously filing a motion for leave to amend their complaint, which amendment will cure any potential deficiencies in the pleadings. Finally, §301 pre-emption does not apply in this case, as the resolution of plaintiffs' claims do not require any interpretation of the collective bargaining agreement between their union and MVM.

I.  **STATEMENT OF FACTS**

Plaintiffs all worked for MVM as "court security officers" at the Moakley Courthouse in Boston and the Federal Courthouse in Springfield[1], Massachusetts. Plaintiff's First Amended Complaint, ¶ 75. MVM contracted with the United States Marshall Service to provide this service until January 31, 2012, when the contract was awarded to another company. Plaintiff's First Amended Complaint, ¶ 75.

Whether full time or part time, plaintiffs all regularly worked 8.5 hour shifts while employed by MVM. Plaintiff's First Amended Complaint, ¶ 76. By law and MVM rules, all plaintiffs were entitled to a 30 minute unpaid meal break during each 8.5 hour shift. MVM rules plainly stated, "the meal break may not be considered as time worked." Plaintiff's First Amended Complaint, ¶ 76.

During their shifts, all plaintiffs were required to carry two-way radios and were required to answer their radios if called. Plaintiffs were not permitted to remove the radios from the Courthouse. Plaintiffs were also issued firearms that they were not permitted to remove from the Courthouse.[2] As a result of these requirements, plaintiffs were denied the right to leave the Moakley Courthouse during their meal break. Plaintiff's First Amended Complaint, ¶¶ 77-79.

Despite the fact that they were not permitted to leave the courthouse, plaintiffs were not compensated for their 30 minute meal breaks. MVM never counted the plaintiffs'

---

[1] In Plaintiffs' First Amended Complaint, plaintiffs are identified as all working in the Boston courthouse. In the Second Amended Complaint, filed contemporaneously with this Opposition, each plaintiff's place of work is correctly identified as either the Boston or Springfield courthouse.

[2] Defendant MVM contends that these requirements were imposed upon it by the US Marshall Service. While this may be true, it does not explain why the defendant failed to pay plaintiffs for this work, as plaintiffs allege Massachusetts law requires.

2

30 minute meal breaks as hours worked for the purposes of calculating overtime owed to plaintiffs.  Plaintiff's First Amended Complaint, ¶¶ 79-80.

Plaintiffs were paid according to the collective bargaining agreement between their union and MVM.  However, the only reference to that contract that is necessary in this case is to its wage tables.

## II. ARGUMENT

### A. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE FEDERAL ENCLAVE DOCTRINE

#### 1. MVM has not shown that the building at One Courthouse Way is a federal enclave.

MVM argues that the building at One Courthouse Way is a federal enclave, and therefore subject to the exclusive jurisdiction of the United States. However, MVM fails to allege sufficient facts to show that the courthouse is a federal enclave under U.S. Const. Art. I, § 8 cl. 17. When discussing the state regulation of federal enclaves, "the first question [is] whether [the] enclaves in question were purchased by the Consent of the Legislature…" Paul v. United States, 371 U.S. 245, 264 (1963). "Without the State's 'consent' the United States does not obtain the benefits of Art. I, s 8, cl. 17, its possession being simply that of an ordinary proprietor." Id.  Thus, to be a federal enclave entitled to exclusive federal jurisdiction, the state legislature must expressly consent,[3] either before or after the property transfer, to the transfer of jurisdiction. Id.; See also Kelly v. Lockheed Martin Services Group, et al, 25 F. Supp. 2d 1, 4 (1998). (When the federal government acquires

---

[3] An example of state legislative consent, from Miller v. Wackenhunt Services, Inc.:
The consent of the State of Missouri is given, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, to the acquisition by the United States by purchase, condemnation, or otherwise, of any land in this state as sites for custom houses, courthouses, post offices, arsenals, forts and other needful buildings required for military purposes.
808 F. Supp. At 700.

land within a state without the consent of the state, the United States possesses as an ordinary proprietor and does not obtain the 'exclusive' benefits of Article I, § 8, Clause 17.)

In Exhibit 1 of its motion, MVM alleges that, at some point in 1992, the area including the land on which the courthouse would be built was condemned and that the U.S. government took possession of the land. However, this is the extent of the information conveyed by the document. Nowhere in the exhibit or the brief is any mention made of the Massachusetts state legislature, in any context. The property transfer is accomplished by the order of the U.S. District Court. MVM has not shown that the Massachusetts legislature consented, at any time, to the transfer of exclusive jurisdiction to the federal government – a necessary predicate to creating a federal enclave in the first place. At most, MVM has shown that the U.S. government has the interests of an ordinary proprietor overseeing the building located at One Courthouse Way.

### 2. The State Law relied upon by Plaintiffs existed prior to the transfer of One Courthouse Way.

Assuming, *arguendo*, that the building at One Courthouse Way is a federal enclave, Mass. Gen. Laws ch. 149 § 148, still applies within its borders. MVM erroneously claims that this statute does not apply because it has been amended after the acquisition of the land by the federal government. This claim misinterprets the prevailing law.

MVM quotes Rodriguez v. U.S. Marshal Service, for the proposition that "state laws adopted after cession of property as a federal enclave are without force or effect on the enclave." 2005 WL 2203166 (Dist. P.R. 2005); quoting Lord v. Int'l Brotherhood of Elec. Workers, 646 F. 2d 1057, 1060 (5th Cir. 1981). MVM goes on to note that "it is well settled that activities on federal enclaves are shielded from state law unless Congress provides 'clear and unambiguous' authorization for such regulation." Goodyear Atomic Corp. v.

4

Miller, 486 U.S. 174, 175 (1988). MVM ignores that current statutes that possess relevant predecessors are enforceable in federal enclaves. Kelly v. Lockheed Martin Servs. Group, 25 F. Supp. 2d 1, 6 (D. P.R. 1998). MVM accurately points out that the land at One Courthouse Way was taken by the federal government by District Court decree on or about December 14, 1992. MVM then states that because Mass. Gen. Laws ch. 149 § 148 was amended in the years following this transfer, the statute as it stands today cannot be considered applicable to courthouse. However, the only amendments made to Mass. Gen. Laws ch. 149 § 148 in the intervening years were the addition of a private right of action in July , 1993, and the creation of automatic treble damages in August, 2008.

In this case, plaintiffs seek to enforce the substantive requirement within M.G.L. c. 149, § 148 that wages be paid. Whether subsequently amended or not, Mass. Gen. Laws ch. 149 § 148 was enacted and in effect in 1992 when the land at One Courthouse Way was transferred to the federal government. Even if the subsequent amendments are considered relevant alterations, Mass. Gen. Laws ch. 149 § 148 as it is now would still apply, given that Mass. Gen. Laws ch. 149 § 148 as it was then is a "relevant predecessor state law" under Kelly.[4]  Massachusetts law has required that employees be timely paid since long before 1992. The subsequent amendments to the law simply flesh out that requirement and must therefore apply to MVM. Kelly v. Lockheed Martin Services Group, 25 F. Supp. 2d 1, 4 (D.P.R. 1998) ("…subsequent state regulatory changes consistent with the state law in place at the time of cession are applicable within a federal enclave. *Paul v. United States,* 371 U.S.

---

[4]     Even in Rodriguez, the court denied the plaintiff's motion to dismiss pursuant to federal enclave jurisdiction, as MVM had not shown when the United States took control over the property and whether or not this pre- or post-dated the local law underlying the plaintiff's complaint. 2005 WL 2203166 (D.PR 2005).

5

Case 1:12-cv-10666-RWZ   Document 11   Filed 05/18/12   Page 6 of 16

245, 269, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). Thus, the state/federal law is not frozen in time as of cession, but continues to develop as the state develops the law.").

### 3. Congress has Clearly Authorized the Application of Mass. Gen. Laws ch. 149 § 148 within federal enclaves.

The Federal Enclave doctrine also allows for the application of state laws in situations where Congress has authorized the enforcement of those laws. The Service Contract Act of 1965, 41 U.S.C § 351, under which MVM performed services, constitutes a clear and unambiguous signal of Congressional intent to apply local workers' benefits laws. Given this authorization, the plaintiffs remain entitled to enforce their state wage law rights.

Federal enclaves are shielded from direct, post-transfer state regulation, even if the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation. Goodyear Atomic Corp., 486 U.S. at 180. In Goodyear, the Court found that the statute at issue in that case, 40 U.S.C. § 290, did indeed provide the unambiguous authorization necessary to empower states to apply "workmen's compensation laws" to federal premises. Id. at 182.

In Diaz v. General Security Services Corporation, 93 F. Supp. 2d 129, 141 (D. P.R. 2000), the court held that "the Service Contract Act of 1965, 41 U.S.C. § 351 ("SCA"), constitutes the clear and unambiguous signal of Congressional intent, as required by [Goodyear Atomic]."). In that case, the plaintiffs, court security officers at the Federal District Court in Puerto Rico, sued the federal contractor for violation of Puerto Rico employee benefits laws. Id., at 135. The court looked to the SCA as creating a clear intent to allow such suit to proceed in a federal enclave. The court concluded that "this statute

clearly implies that local laws conferring benefits on workers will be applicable to employees of private companies working at federal installations." Id. at 135.

The Diaz court's finding that the SCA authorizes state claims for employment benefits in federal enclaves was based on the SCA's reference to "state or local law." The Court found:

> [T]he SCA constitutes recognition by Congress that federal contract employees will enjoy the benefit of local laws governing fringe benefits. This Congressional intent is unmistakably communicated by the wording of the statutory enactment itself. Fringe benefits for contract employees who furnish services to the government "shall include medical or hospital care, pensions, occupational injury compensation, unemployment benefits, vacation and holiday pay, etc. and other bona fide fringe benefits not otherwise required by Federal, State or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 351(2)(1987) (emphasis supplied). While it is true that the statute does not explicitly state that local laws will apply, no fair reading of the emphasized phrase makes possible any other construction of the language. A message does not have to be *in haec verba* to be "clear and unambiguous." **The only reasonable inference to be drawn from the SCA is that local and state laws were to provide the foundation upon which the SCA was to be built, to insure that contract employees received certain minimum benefits. The application of local law providing separate and independent employment benefits, such as the law of Puerto Rico here, was unambiguously assumed.**

Id. at 141-42 (emphasis added).

Kelly v. Lockheed Martin Services Group, 25 F. Supp. 2d 1 (1998), a case cited by MVM, actually gives further support for the application of M.G.L. c. 149, § 148 here. In that case, the court held that Service Contract Labor Act (SCA), 41 U.S.C. § 351, does not authorize the application of local labor laws in federal enclaves but does allow for the application of local minimum wage, fringe benefit, safety and notification laws. Kelly, 25 F. Supp. 2d at 7. But the Kelly court also found that the SCA explicitly authorizes the application of local minimum wage laws, which under any fair reading would authorize the

7

application of the wage law at issue in this case. <u>Kelly</u> and <u>Diaz</u> further support the enforceability of plaintiffs' state claims here, just as <u>Goodyear Atomic</u> held that 40 U.S.C. § 290 explicitly authorized the application of state workers compensation laws in federal enclaves. 486 U.S. at 182.

MVM has failed to establish that One Courthouse Way is a federal enclave. Even if it is, the plaintiffs' claims are still adjudicable, as their state law rights pre-dated the creation of the federal enclave. Finally, the application of the plaintiffs' state law rights within the federal enclave has been authorized by Congress through the Service Contract Act. The motion to dismiss based on the defense of federal enclave must be denied.

### B.   TO THE EXTENT THAT THE PLEADINGS ARE INSUFFICIENT, PLAINTIFFS SHOULD BE PERMITTED TO AMEND.

Defendant MVM attacks the sufficiency of plaintiffs' complaint and their class allegations. Because plaintiffs' complaint was filed in state court, the Court should grant plaintiffs leave to amend their complaint rather than dismiss it. With regard to the class allegations, plaintiffs have withdrawn such allegations from their proposed Second Amended Complaint. The plaintiffs are therefore approximately 70 court security officers who worked at the United States Federal Court Houses in either Boston or Springfield Massachusetts.

Defendant bases its claim that the plaintiffs' pleading is insufficient on the standard set out by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal,</u> 556 U.S. 662 (2009). Nevertheless, "…these cases left intact the long-standing fundamentals of notice pleading. [citation omitted] The notice pleading requires a complaint to contain a 'short and plain statement of the claim showing that the pleader is entitled to

relief'…giving 'the defendant fair notice of what the …claim is and the grounds upon which it rests." Pruell v. Caritas Christi, 1010 WL 3789318 (D. Mass. Sept. 27, 2010).

To the extent that MVM contests the sufficiency of Plaintiffs' First Amended Complaint for its alleged failure to plead sufficient facts to give it "fair notice" of the basis of the claims asserted, the Second Amended Complaint cures any such deficiencies. See DeSilva v. North Shore-Long Island Jewish Health System, Inc., 770 F. Supp 497, 509 (E.D. NY 2011). The statute implicated in plaintiffs' claim, M.G.L. c. 149, § 148 requires employers to pay their employees "the wages earned by him" within 6 or 7 days of the pay period in which the wages were earned. Massachusetts requires employers to pay employees who work more than 40 hours in a week "at a rate not less than one and one half times the regular rate at which he is employed." M.G.L. c. 151, § 1A. Massachusetts has interpreted its statutory scheme to require that employers compensate their employees for periods when they are confined to the workplace. Consequently, the Second Amended Complaint gives notice to MVM of the location where each plaintiff worked, how long each worked there, that all employees generally worked an eight and one-half hour workday, that about 60 of them generally worked five eight and one-half hour workdays per week, that the remainder generally worked 5 eight and one-half hours workdays every two weeks, the approximate hourly rates earned by each, and the general damages suffered by each. Under no case cited by the defendants would this level of specificity in the complaint warrant dismissal for insufficient pleading.

To the extent that the First Amended Complaint is insufficient, the plaintiffs should be permitted to amend their complaint. This issue was recently addressed in Pruell v. Caritas Christi, 2012 WL 1324455 (1st Cir. 2012). In Pruell the plaintiffs brought a class action in the United States District Court in Massachusetts complaining of systematic under-compensation

including a failure to be paid for work performed during their meal break.  The defendant moved to dismiss and the Court found the wage claims insufficiently pled; however, the Court granted plaintiffs' leave to amend their complaint.  Upon the filing of the amended complaint the defendant Caritas renewed its motion to dismiss again citing insufficiency of the pleadings.  At this second occasion the Court dismissed with prejudice.  The plaintiffs appealed.

The United States Court of Appeals For the First Circuit vacated dismissal with prejudice and remanded the case to give the plaintiffs a further, final opportunity to file a sufficient complaint."(W)e think the motion to amend should be allowed.  The precedents on pleading specificity are in a period of transition, and precise rules will always be elusive because of the great range and variations in causes of action, fact patterns and attendant circumstances (e.g. warnings, good faith of counsel)."  Pruel, at 9. Citing Iqbal the Court continued: "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.   The Court also noted that while some specifics may still be lacking that the information necessary may be in the control of the defendants.

In the instant case, the First Amended Complaint was filed in state court.  The Pruel plaintiffs were afforded *two* opportunities in federal court to bring their filing into compliance.  Here, plaintiffs seek only one.  As such, the plaintiffs should clearly be granted leave to file a Second Amended Complaint.

In their proposed Second Amended Complaint the plaintiffs have pled with as much specificity as they are able stating dates of employment, pay rate and an approximation of the number of unpaid hours and/or overtime hours for all of the 70 plaintiffs.  The specific dates of the unpaid meal breaks are in control of the defendant, MVM, Inc.

For all of the above reasons the Defendant's Motion To Dismiss should be denied with respect to its claim of failure to state a claim, Federal Rule of Civil Procedure 12(b)(6), and the plaintiffs should be granted the opportunity to amend their complaint. Plaintiffs' Motion to Leave to Amend and their proposed Second Amended Complaint are filed herewith.

C. **THE RESOLUTION OF PLAINTIFFS' CLAIMS DOES NOT REQUIRE INTERPRETATION OF THE COLLECTIVE BARGAINING AGREEMENT, SO THEY ARE NOT SUBJECT TO PREEMPTION UNDER §301 OF THE LMRA.**

MVM removed this case and now moves to dismiss by arguing that the plaintiff's state law claims are preempted by § 301 of the LMRA. Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 451 (1957); Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405-06 (1988). Under the strand of §301 preemption applicable here, state law claims which cannot be resolved without interpreting a private sector collective bargaining agreement must be dismissed. Allis Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). As shown herein, plaintiffs' claims relate only to MVM's unlawful refusal to allow them to leave their workplace during their unpaid leaves. The resolution of plaintiffs' claims, including the straightforward calculation of damages due, involves no interpretation of the collective bargaining agreement. As such, §301 preemption is inapplicable and the motion to dismiss must be denied.[5]

MVM points to various provisions in the collective bargaining agreement that had been in effect between it and the plaintiffs' union that it contends must be "interpreted" to evaluate plaintiffs' claims. MVM's claimed need for "interpretation" is absurd, as no reference to the collective bargaining agreement is necessary for resolution of this case. MVM does not dispute that the plaintiffs were not paid for a one half hour meal break

---

[5] The inapplicability of §301 preemption also leaves this court without subject matter jurisdiction.

during their eight and one half hour shifts. Under M.G.L. c. 149, §100, employees must be given a thirty minute break if they work over six hours, and must be allowed to leave the employer's premises during this break if it is to be unpaid.[6]

In order to process the plaintiffs' claims, the only reference to the collective bargaining agreement that is necessary is to review the wage table to determine damages. No interpretation of the collective bargaining agreement is necessary. A mere *reference* to a collective bargaining agreement, as would occur here, will not trigger § 301 preemption. Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished). This case is therefore inapposite to the cases relied upon by MVM, in which determination of the wage claims required in depth analysis of the collective bargaining agreements at issue.

MVM's claim that this case is akin to the recent First Circuit case Cavallaro v. UMass Memorial Healthcare, Inc., Case No. 11-1073 (1st Cir. April 18, 2012), fails. Cavallaro relies heavily on Adames v. Executive Airlines, 258 F. 3d 7 (1st Cir. 2001). In Adames, the court affirmed the dismissal of flight attendants' local Puerto Rico wage and hour claims because

---

[6] The Massachusetts Attorney General has held that employees must be paid for meal periods if unable to leave the employer's premises:
> Massachusetts law states that employees must receive a 30-minute break after six hours of working. An employee must be free to leave the workplace during the break. An employee can voluntarily give up the meal break, but must be paid for all hours worked. Compensation for the 30-minute meal break must be paid if the employee has voluntarily agreed to waive his or her meal break by (1) working through his or her meal break, or (2) remaining on the premises at the request of the employer during the meal break. The break period may be unpaid. Certain exemptions from this requirement can be found in M.G.L. c. 149, s. 101

http://www.mass.gov/ago/doing-business-in-massachusetts/labor-laws-and-public-construction/wage-and-hour/meal-breaks.html. The interpretation of the Attorney General, as the enforcement agency for c. 149, is entitled to deference. Felix A. Marino Co., Inc. v. Commissioner of Labor and Industries, 426 Mass. 458, 461, 689 N.E.2d 495, 497 (Mass. 1998).

interpretation of the CBA was necessary to assess their remedy for alleged overtime violations. The court in Cavallaro uses Adames as its example of when state claims are so intertwined with the CBA that mere consultation gives way to interpretation. Cavallaro, Case No. 11-1073 at 5; citing Adames, 258 F. 3d at 12-17. However, just as discussed regarding Cavallaro below, the factual details of the Adames case were much more complicated than those at issue here, and the legal analysis called for was considerably more complex.

Several other courts have refused to apply Adames because of how particularly complicated the analysis necessary to determine damages in that case was. "At first glance, [Adames] seems controlling… [but that case] the analysis focused on the need to compare state labor laws to the CBA, the presence of broad terms that would require examinations of industry standards and extrinsic evidence, and the need for complicated calculations." Padilla-Gonzalez v. Local 1575, 635 F. Supp. 2d 105, 111-12 (D.P.R. 2009). "Unlike Adames, in this case there has been no indication that complex calculations are required or that industry standards are necessary to determine the meaning of CBA provisions." Id. at 112.

Similarly, in Daniels v. Recology, Inc., the court found that in Adames, "the defendant paid [the] flight attendants according to a complex schedule that took into account flight time, actual duties, and time zones crossed during their shifts. Because plaintiffs' pay was not simply linked to hours worked, the court would have had to interpret the CBA to calculate hourly wages." 2010 WL 5300878 (N.D. Cal. 2010). The court found Adames inapplicable because the plaintiff "does not allege that he disputes the wage rates under the CBA. The wage calculations are also not so complex such that this Court would have to interpret, as opposed to reference, the CBA to determine damages… Recology compensated

Daniels for both regular and overtime hours worked at a per-hour rate... As such, the Court would merely have to 'look to,' as opposed to interpret, the CBA to calculate damages." Id.

As in Padilla-Gonzalez and Daniels, the facts of this case are not nearly complex enough to fall under the reasoning of Adames. The plaintiffs here are not challenging the wage rate under the CBA. Nor does the compensation scheme involve time zones, complicated scheduling, or varying definitions of duties. Indeed, even in Cavallaro, the court noted that whether or not "determining the rate of pay" required contract interpretation or mere consultation was a case specific question. Unlike in Adames, the plaintiffs in this case were compensated according to an ordinary, and undisputed, hourly rate. Calculating wages owed according to an hourly rate is not complicated, and it does it require contract interpretation. It only requires a pad and a pencil.

While Cavallaro, like this case, involves unpaid meal break, the similarities end there. In Cavallero, the definition of "contract interpretation" relies heavily on Adames, and is distinguishable in the same way. Like in Adames, the Cavallero court holds that the issues are complex to the point that "resolving the factual dispute does not resolve whether or how much wages are owed." Cavallero, at 6. The court points out specifically that "compensable meal time depends upon whether a nurse remained in the 'patient care area,'" and determining the meaning and contours of a "patient care area" requires "construing and applying the various 'peculiarities of industry specific wage and benefit structures' embodied in the CBA..." Id., citing Adames at 13. Determining what constitutes a "patient care area" is what requires contract interpretation in Cavallero, whereas in this case the plaintiffs were merely required to stay in the "building." Presumably, the definition of "building" will not require contract interpretation.

14

The court in Cavallero also notes that the CBA in that case provided additional reimbursement schemes which the court reasoned could be interpreted as compensating for the meal-time deficiencies. The court holds that this decision, also, would require determining and construing industry specific norms. Id.

Unlike with the hospital employees in Cavallero and the flight attendants of Adames, the court security officers in this case do not consist of a large sub-species of workers who have created an industry-specific set of wage and benefit structures, nor industry specific jargon like "patient care area." The complex details of Cavallero that made contract interpretation inevitable- the alternative compensation mechanisms, the peculiarities of industry-specific language and terms- are not present here.

The resolution of the plaintiffs' claims will in no way require the court to engage in any interpretation of the collective bargaining agreement between MVM and the plaintiffs' union. This case is not, therefore, subject to §301 preemption. The motion to dismiss should be denied.

### III. **CONCLUSION**

Whether or not the plaintiffs worked in a federal enclave, they are entitled to the protections of M.G.L. c. 149. With regards to their pleadings, the plaintiffs should be granted leave to cure any insufficiency in the pleadings now that the case has been removed. Finally, the resolution of plaintiffs' claims will not require any interpretation of the collective bargaining agreement between their union and MVM. Therefore, §301

preemption is not applicable here.  For all these reasons, the defendant's motion to dismiss should be denied.

> Respectfully submitted,
>
> JOHN H. ARNSTEIN, et al.
>
> By their attorney,

Dated: May 18, 2012                              /s/ *Alan Shapiro*
                                                 Alan Shapiro, BBO # 453800
                                                 Bryan Decker, BBO #561247
                                                 Sandulli Grace, P.C.
                                                 44 School Street, Suite 1100
                                                 Boston, MA 02108
                                                 617-523-2500

## CERTIFICATE OF SERVICE

I, Bryan Decker, counsel to plaintiffs in this matter, hereby certify that on this 18th day of May 2012, the foregoing Opposition to Motion to Dismiss was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

Dated: May 18, 2012                              /s/ *Bryan Decker*
                                                 Bryan Decker