UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10666-RWZ

JOHN H. ARNSTEIN *et al.*

v.

MVM, INC.

MEMORANDUM AND ORDER

October 12, 2012

ZOBEL, D.J.

Plaintiffs, former court security officers, have sued their past employer MVM, Inc. ("MVM") for violations of the Massachusetts wage and labor laws. Specifically, plaintiffs claim that they were required to work during their meal breaks but were denied pay for that work. MVM moves to dismiss and opposes plaintiffs' motion for leave to amend the complaint.

I.  **Background**

The named plaintiffs in this suit are all former court security officers who worked at the federal courthouses in Boston and Springfield, Massachusetts. They were employed by MVM, which had contracted with the federal government to provide security services at those courthouses. Their employment was regulated by a collective bargaining agreement between their union and MVM.

Under that agreement, plaintiffs worked eight-and-a-half hour shifts, including

eight hours of paid work and a half-hour unpaid meal break. Plaintiffs allege that they were required to work during their unpaid meal break because they were required to carry their work-issued two-way radios and answer those radios if called. They further allege that they were not allowed to leave the courthouses during their meal breaks. Plaintiffs were paid only for eight-hour days; they now seek overtime pay for each half-hour meal break during which they allege they were required to work. They base their claims on two Massachusetts state statutes, Mass. Gen. Laws ch. 149, § 148 and Mass. Gen. Laws ch.151, § 1B.

Plaintiffs' first amended complaint seeks relief for themselves and for a class of similarly situated court security officers. MVM moved to dismiss that complaint on three grounds: (1) that the complaint failed to state a plausible claim for relief; (2) that the courthouses were federal enclaves in which the relevant state statutes did not apply; and (3) that the relevant state statutes were preempted by Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Plaintiffs filed a motion for leave to amend their complaint along with a proposed second amended complaint. That proposed complaint would drop plaintiffs' class action allegations and add more specific allegations relating to the hours worked by each named plaintiff. MVM opposed plaintiffs' motion to amend their complaint as futile based on its federal enclave and Section 301 arguments.

II. **Legal Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all

factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court may also consider other uncontested documents relevant to the complaint. 5A Charles Alan Wright et al., Federal Practice & Procedure § 1327 (West 2012) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading . . . ."). If the complaint fails to state a claim upon which relief can be granted, it must be dismissed.

The court "should freely grant leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the court need not grant leave to amend if amendment would be futile—that is, if the complaint as amended would still fail to state a viable claim. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009).

## III.   Analysis

Plaintiffs' claims are preempted under Section 301 of the LMRA. Therefore, MVM's motion to dismiss must be granted and plaintiffs' motion for leave to amend must be denied as futile. As Section 301 is dispositive, the court need not and does not consider MVM's federal enclave arguments.

By its terms, Section 301 merely grants federal courts jurisdiction to hear disputes between employers and labor unions over collective bargaining agreements ("CBAs"). 29 U.S.C. § 185(a). However, the statute has long been construed to require that federal common law be the substantive law governing such suits. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957). Section 301 therefore preempts any

state law claims whose resolution "depends on the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 406 (1988). Such preemption is intended to ensure uniform interpretation of CBAs throughout the nation. Id. at 404-06; see also Local 174 v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962) (finding Section 301 preempted state contract interpretation rules from applying to CBAs).

The Supreme Court has cautioned that not all employment disputes are preempted by Section 301 even if the employee is a union member. A state law claim raising purely factual questions that do not require interpreting a CBA is not preempted. Lingle, 486 U.S. at 407. For instance, the plaintiff in Lingle was fired after filing a workman's compensation claim, and she sued for the state tort of retaliatory discharge. To recover, she was only required to demonstrate her discharge and the employer's unlawful motive. The court held that neither of the elements of her claim required interpreting her CBA, and so Section 301 did not preempt her state tort claim. Id. at 406-07. Likewise, a state law claim is not preempted by Section 301 just because it seeks damages calculated using a wage rate listed in a CBA. Lividas v. Bradshaw, 512 U.S. 107, 125 (1994).

On the other hand, as the First Circuit recently repeated, claims based on state regulatory laws in the economic area are preempted by Section 301 if those claims are "intertwined" with the CBA and "more than mere consultation of the CBA is required." Cavallaro v. UMass Memorial Healthcare, 678 F.3d 1, 7 (1st Cir. 2012). In Cavallaro, hospital employees sued under state law claiming that they were denied compensation

4

for work performed during meal breaks, during training sessions, and before and after their shifts. They argued that their state law claims did not require interpreting the CBA, but were "only a factual dispute as to whether plaintiffs were paid for time spent working through meal breaks, before and after work, and during training sessions." Id. at 8. The First Circuit rejected that argument, noting that resolving the claims would likely require interpreting several provisions of the CBA; "for example, whether certain training programs are compensable depends on the employee having made a 'timely' request to attend[,] and compensable meal time depends upon whether a nurse remained in the 'patient care area.'" Id. For that reason, among others, the First Circuit found the state law claims preempted by Section 301.

As in Cavallaro, plaintiffs here argue that their claims only require resolving factual disputes as to whether they were paid for working through their meal breaks. But as in Cavallaro, resolving plaintiffs' claims will in fact require interpreting several terms of their CBA. To begin with the most basic: plaintiffs claim that they were required to work through their meal breaks because they were not allowed to leave the courthouse, and because they were required to carry their radio and respond if called. Determining whether these restrictions meant plaintiffs were at "work" requires interpreting the definition of "work" (and conversely, the definition of "break") in the CBA.[1] Furthermore, MVM claims that the restrictions on plaintiffs were necessary to

---

[1] Plaintiffs apparently argue they were necessarily at work because they were prohibited from leaving the courthouse. They cite the Massachusetts Attorney General's website for the proposition that under Massachusetts law, an employee must be free to leave the workplace during a break. But the definition of "work" and "break" under Massachusetts law does not control the definition of those terms under the CBA.

comply with federally-imposed security requirements. Several provisions in Article 19 of the CBA deal with the effect of federal government directives on the rights of the parties. Section 1 of that article addresses the procedure to follow if "a government directive necessitates a deviation from the obligations or procedures contained in this Agreement"; section 2 discusses the government's "broad discretion to direct the activities of [MVM]"; and section 3 provides that employees and the union shall be "without recourse" against MVM if the government "requires compliance with specific procedures" such as security clearances or staffing determinations. Determining whether the restrictions imposed on plaintiffs' meal breaks fall under any of these sections will clearly require more than "mere consultation" of the CBA. Cf. Cavallaro, 678 F.3d at 7. Because the plaintiffs' state law claims cannot be resolved without interpreting the CBA, they are preempted by Section 301. They must therefore be dismissed with prejudice.

Plaintiffs' proposed second amended complaint asserts the same state law claims as its first amended complaint. As discussed above, those claims are preempted by Section 301. Amendment would therefore be futile, and so leave to amend is denied.

## IV.  Conclusion

Defendant's motion to dismiss the first amended complaint (Docket # 4) is ALLOWED. Plaintiffs' motion for leave to amend the complaint (Docket # 12) is DENIED as futile.  Judgment may be entered dismissing the complaint.

---

See Lucas Flour, 369 U.S. at 103-04.

|  |  |
|---|---|
| October 12, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |